UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
_____

| | |
|---|---|
| **HYUN JIN LEE,** | Case No. 13-_____ |
| **Plaintiff,** | |
| -against- | **CIVIL COMPLAINT** |
| **CVS CAREMARK CORP., CVS PHARMACY, INC., CVS, NEW JERSEY CVS PHARMACY LLC, and "JOHN DOE",** a fictitious name to be amended upon discovery, | **Jury Trial Demanded** |
| **Defendants.** | |

_____

Plaintiff alleges as follows by and through her counsel:

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), 1367 (supplemental), 2202 (injunctive relief), and 42 U.S.C. §§1981, 1985, and 1988 (civil rights).

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, diversity jurisdiction pursuant to 28 U.S.C. § 1332, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. and 28 U.S.C. *§1391(b)(2) and (3),* in that Defendants maintain the establishment in question within this judicial district, and the majority of the events comprising the federal claims have occurred within this judicial district. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## THE PARTIES

3. At all times mentioned herein, Plaintiff HYUN JIN LEE is an adult ethnic Korean who resides in the state of New Jersey, Atlantic County.

4. Defendant CVS Caremark Corporation is a Delaware corporation with corporate headquarters at 1 CVS Drive, Woonsocket, RI 02895 ("Caremark"). Upon information and belief, Defendant Caremark was created following the merger of CVS Pharmacy, Inc. and Caremark Rx, Inc. in March 2007.

5. Defendant CVS Pharmacy, Inc. ("CVS ") is a wholly owned subsidiary of Defendant Caremark Corporation. CVS is a Rhode Island corporation with corporate headquarters at 1 CVS Drive, Woonsocket, RI 02895.

6. Defendant New Jersey CVS Pharmacy, L.L.C ("NJ CVS"), is a subsidiary of Defendant Caremark and a New Jersey limited liability company.

7. Upon information and belief, at all times relevant herein and to this date, Defendants Caremark, CVS and NJ CVS own, operate and control the CVS Pharmacy located at 328 W White Horse Pike, Pomona, NJ 08240 (609) 965-8170 and control the employment training aspects there to safeguard its expected signature customer service and experience.

8. Upon information and belief, Defendant John Doe is an adult male employed by Defendants Caremark, CVS and NJ CVS, believed to reside in Atlantic County and is the person named "William" on the receipt received from the CVS Pharmacy located at 328 W White Horse Pike, Pomona, NJ 08240 (609) 965-8170, as alleged herein below. Defendant John Doe 1 is a fictitious name. Plaintiff will amend the Complaint when she ascertains the true name and capacity thereof.

9. Upon information and belief, that at all times relevant herein, each of Defendants was the agent, servant, employee, joint venture and/or co- conspirator of each of the other Defendants, and that each of the acts alleged to have been done by each Defendant was done in that Defendant's capacity as the agent, servant, employee, joint venture and/or co-conspirator of the other Defendants.

10. Based upon the foregoing relationships among the parties, Defendants are responsible under the theories of respondeat superior, actual agency, apparent agency, direct liability and/or assumption of liability for all causes of action set forth below.

## STATEMENT OF FACTS

11. Among the many commercial retail stores in the area, Plaintiff chose to patronize CVS because of its reputation as a large chain drug store with great customer service and hospitality, also as nationally advertised. Accordingly, she patronized the store with the expectation of the nationally recognized quality and customer service.

12. On or about February 7, 2013, Plaintiff received notice from Defendants, properly listing her name as "Hyun Lee" thereon, that her order was ready for pick up (**Exhibit "A"**)[1].

13. On or about February 7, 2013, Plaintiff entered the CVS Pharmacy at 328 West White Horse Pike   Egg Harbor City, New Jersey to pick up and pay for her order.

14. Plaintiff received the cash register computer generated receipt and was shocked, stunned, mortified, humiliated and severely distressed that in the space designated for her customer name or identification was instead the words "Ching Chong" Lee (**Exhibit "B"**).

---

[1] All exhibits attached hereto are true and correct copies incorporated in their entirety as if fully set forth herein.

15. "Ching chong is a pejorative term sometimes employed by speakers of English to mock people of Chinese ancestry, or other Asians who may be mistaken for Chinese."( http://en.wikipedia.org/wiki/Ching_chong )

16. The offensive racial epithet on the receipt caused Plaintiff immediate mental anguish, emotional distress, extreme embarrassment and anger. This incident has continued to cause her mental anguish, emotional distress, and anger.

17. Plaintiff complained to CVS customer relations by written notice that "Does the name in any way match my name? I had ordered online with MY name!!! And why in the world would the clerk change my name? Do you think it's funny? It's very disturbing to me!!!" (**Exhibit "C"**).

18. On April 4, 2013 CVS responded as follows:

    "**From:** no-reply@cvs.com
    **Date:** April 4, 2013, 10:57:37 AM EDT
    **To:** hjljhp@gmail.com
    **Subject: Hello from CVS Customer Relations**

    Hyun Lee,    Thank you for your e-mail.  I am eager to respond. I am very sorry to hear about your experience with the photo staff at our Pomona location recently. Your comments regarding the unprofessional behavior presented by William will be recorded here and we will notify the district and regional managers immediately. I assure you that this incident will be addressed at store level and William will be counseled and trained. We greatly value our customer's constructive feedback. I can assure you we will take the appropriate action with the store to ensure there is no recurrence.  If you would like to discuss this matter further please contact us at 1-800-746-7287.  We are available Monday through Friday 8:30 am - 7 pm ET. Thank you. Dee   CVS Customer Relations      The reference number for this contact is 3152632. "

19. Defendants Caremark, CVS and NJ CVS have the authority to create and implement a policy to prevent and stop such racial by their employees, and implement a zero tolerance policy.

20. Bias is so intolerable that it is a criminal matter pursuant to N.J. Stat. § 2C:16-1 wherein courts can order the offender to "(1) complete a class or program on sensitivity to diverse communities, or other similar training in the area of civil rights;(2) complete a counseling program intended to reduce the tendency toward violent and antisocial behavior; and (3) make payments or other compensation to a community-based program or local agency that provides services to victims of bias intimidation.

21. Defendants' customer care made matters worse by tolerating the racial discrimination of their employee Defendant after their being notified by Plaintiff of the bias by then retaining John Doe 1 at the store, which that alone is extreme and outrageous conduct under the circumstances, and without specific discrimination counseling by a qualified counselor, which retaining him alone supports the discriminatory conduct and forcible removal from the store against Plaintiff.

22. By failing to adequately intervene after receiving Plaintiff's written notice of the unlawful conduct,

Defendants ratified the conduct Defendant John Doe 1 which constitutes evidence of a policy, practice, custom or procedure to deprive individuals of their constitutional rights.

23. Upon information and belief, Defendants Caremark, CVS and NJ CVS maintain control, oversight, and direction over the operation of the facilities and offices in which Defendant John Doe works and where Plaintiff patronized.

24. Upon information and belief, CVS employees enter a customer name or other identifying word into the customer name field on the register computer when that customer's order is placed.  Employees also have the power to change this customer identification in the computer at any time.

25.  Upon information and belief, that the words entered into the customer name field are viewable on the computer screen to all CVSs employees.

26. Upon information and belief, that at least one CVS employee and management employee saw or should have seen the racial slur on the computer screen.

27. Upon information and belief, at least one CVS employee and management employee knew or should have known that the racial slur appeared on the printed receipts CVS generated to Plaintiff.

28. Upon information and belief, that CVS employees have been entering racial epithets into the customer name field for non-Caucasian individuals for a period of time, and that CVS employees made a custom and practice of entering such derogatory remarks.

29. 3Upon information and belief, no racial epithets against Caucasian patrons or patrons of other races or ethnicities, to the extent such persons were in the CVS at issue on the date alleged, were printed on other receipts.

30.  Upon information and belief, any individual viewing the receipts, including Plaintiff's credit card company, could see that the published racial slur was derogatory and discriminatory against Asians in general.

31. This shocking discrimination aimed at Plaintiff is unacceptable in any place of public accommodation, and a civilized society cannot tolerate such behavior.  Rather than operate within the requirements of the law and within social boundaries of common decency, CVS created and maintained an objectively abusive and hostile environment for Plaintiff based solely on her race and continues to do so by permitting John Doe to remain in the particular store which essentially ratifies forcibly removing Plaintiff from that store because of her race.

32. This act and the following acts of ratifying the bias was deliberately calculated to make Plaintiff's experience so intolerable and unequal as to bar her and others similarly situated from the premises in the future in the same manner as if she had been forcibly removed.

33. Based upon the foregoing, Plaintiff has been unable to sleep and has suffered extreme humiliation, embarrassment, loss of enjoyment of life, alienation, and mental anguish for which she seeks compensatory and punitive damages.
34. Since the incident in question, Plaintiff has been struggling to overcome the aforementioned injuries on her own, but to no avail.
35. Upon information and belief, as of 2012, Defendant CVS Caremark Corporation had total revenue of $123.1 billion[2], of which punitive damages of One Million Dollars demanded here are within Defendants' ability to pay and is an award is reasonable in its amount and justified in the circumstances of the case, in light of the purpose to punish Defendants and to deter Defendants from repeating such conduct.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Federal Race Discrimination in Violation of 42 U.S.C. §2000a(a)** *et seq***.**

36. Plaintiff repeats the foregoing fully as if set forth herein at length.
37. 42 U.S.C. §2000a provides that all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the grounds of race.
38. The CVS store in question is a public accommodation under Title II of the Civil Rights Act of 1964, 42 U.S.C. §2000a(b)(2).
39. The operation of Defendants CVS affects commerce within the meaning of 42 U.S.C. §2000a(c)(2).
40. Defendants denied Plaintiff full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of CVS because of her race when CVS employees created, maintained, printed, published, and distributed receipts bearing anti-Asian racial epithets, while similarly situated non-Asian customers were given receipts with no such epithets.
41. Defendants have implemented a policy or practice of denying Asian customers, including Plaintiff, on account of race, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of CVS on the same basis as it makes such available to non-Asian customers.  This policy has been carried out by denying Asian-American customers, including Plaintiff and his companion, equal treatment in terms of the derogatory slur displayed on CVS' computer screen , printed on receipts, and published to Plaintiff, other CVS' employees, and Plaintiff's credit card company. Defendants' acts were calculated, and had the effect of,

---

[2] http://phx.corporate-ir.net/phoenix.zhtml?c=99533&p=irol newsArticle&ID=1781998&highlight=

discouraging Asian customers, including Plaintiff, from visiting CVS.

42. Defendants' conduct constitutes both disparate treatment and disparate impact in deliberate and substantial disregard of Plaintiff's rights.

43. As a direct and proximate result of Defendants' actions or inactions, Plaintiff has suffered and continues to suffer injury, loss, and damages in an amount according to proof and is entitled to recover from Defendants monetary damages and costs and attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Federal Race Discrimination in Violation of 42 U.S.C. §1981** *et seq*.

44. Plaintiff repeats the foregoing fully as if set forth herein at length.

45. Title 42, U.S.C. §1981 provides that all persons shall have the same right to make and enforce contracts, and to do so freely of racial discrimination and harassment.

46. The CVS store in question is a place of business that offers members of the public the opportunity to contract for services, retail goods, pharmaceutical purchases, food, among other purchases made available to the public.

47. Upon information and belief, Defendants intentionally denied Plaintiff the same rights Defendants afford to other non-Asian persons to make and enforce such contracts, by intentionally engaging in racial discrimination against Plaintiff in violation of §1981 by implementing, sustaining, and failing to monitor a pattern and practice of refusing to contract with Plaintiff on equal terms when CVS employees created racially offensive and derogatory receipts.

48. Upon information and belief, Defendants were motivated by racial animus when they refused to contract on equal terms with Plaintiff on the basis of his race.

49. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer mental anguish, embarrassment, humiliation, and apprehension, and is entitled to compensation for such injuries as well as other monetary damages, costs and attorneys' fees.

**AS AND FOR A THIRD CAUSE OF ACTION**

**Conspiracy in Violation of 42 U.S.C. § 1985,** *et seq*.

50. Plaintiff repeats the foregoing fully as if set forth herein at length.

51. Defendants' acts as alleged herein constitute racial discrimination under 42 U.S.C. § 1985, *et seq*. Among other things, Defendants and their employees and/or agents, or any combination thereof, conspired to deprive Plaintiff of the equal protection of the law and/or the equal privileges and immunities provided under the law.  This conduct is prohibited under 42 U.S.C. § 1985, *et seq*., which makes it unlawful for two or more persons in any state to conspire for the purposes of

depriving, either directly or indirectly, any person or class of persons the equal protection of the law, or any equal privileges and immunities under the law.

52. A number of Defendant employees, including "William", John Doe and customer care, saw the racially incendiary customer name entered on Plaintiff's receipts, but did nothing to change them. These same employees printed and distributed copies of those receipts to Plaintiff with full knowledge of their contents, and with full knowledge of the fact that other patrons, other employees and Plaintiff's credit card company could view their content.

53. Defendants' conduct was deliberate and with substantial disregard to Plaintiff's rights.

54. Plaintiff was injured by this conspiracy and deprived of her rights and privileges under the law.

55. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer mental anguish, embarrassment, humiliation, and apprehension, and is entitled to compensation for such injuries as well as other damages to be proven at trial, and attorneys' fees as set forth below.

**AS AND FOR A FOURTH CAUSE OF ACTION**

**New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. §§10:5-1 to -49,**

56. Plaintiff repeats the foregoing fully as if set forth herein at length.

57. At all relevant times, the CVS store in question was and is a place of public accommodation, resort or amusement, within the meaning of LAD. Defendants were owners, lessees, proprietors, managers, agents or employees of a business establishment engaged in the sale of retail goods to be purchased on the premises, operating as CVS Pharmacy located at 328 W White Horse Pike, Pomona, NJ 08240 (609) 965-8170

58. During the time Plaintiff was on the premises, receipts such as those Plaintiff incurred were created and distributed to other patrons, and/or their credit card companies without racial epithets in the "customer name" field.

59. Defendants denied Plaintiff the accommodations, advantages, facilities and/or privileges provided to other non-Asian persons as alleged herein on account of Plaintiff's race.

60. Defendants intentionally discriminated against Plaintiff on the grounds of her race in a place of public accommodation, resort or amusement by denying her the full enjoyment of the accommodations, advantages, facilities and/or privileges provided to other persons violating LAD.

61. The decision to print and give to Plaintiff the racial slur receipt was the result of intentional discrimination on the basis of her race and constituted a violation of her rights as guaranteed by LAD.

62. The decisions by Defendants' customer care to retain Defendant John Doe was the result of

intentional discrimination on the basis of Plaintiff's race and constituted a violation of her rights as guaranteed by LAD.

63. The reasons offered by Defendants' customer care for the racial slur receipt were pretext.

64. Defendant's actions were willful and wanton and exhibit malice and/or reckless indifference to Plaintiff's rights under the LAD, and plaintiff is therefore entitled to receive punitive damages.

65. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer mental anguish, embarrassment, humiliation, and apprehension, and is entitled to compensation for such injuries as well as other damages to be proven at trial.

66. Defendants' conduct was done with malice, deception, and oppression and in reckless disregard for Plaintiff's rights as a human being and guest of this State, for which appropriate injunctive relief and an award of punitive damages, pain and suffering, inconvenience, mental anguish, attorneys fees, expert fees and costs and disbursements are appropriate along with all other relief to which he is entitled.

## AS AND FOR A FIFTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

67. Plaintiff repeats the foregoing fully as if set forth herein at length.

68. Defendants, by and through their employees or agents, engaged in the shockingly outrageous conduct alleged herein intentionally and maliciously for the purpose of causing Plaintiff to suffer humiliation, mental anguish, apprehension, and emotional distress.

69. Defendants' conduct is the type that cannot be tolerated in a civilized society. Defendants used and/or ratified a highly offensive and derogatory racial epithet in their computer system and on printed receipts that were handed to Plaintiff and were sent to the credit card company. The epithet, which is akin to the "N" word for Asians, was shared with other employees who joined in on the mockery and oppression.

70. Defendants' conduct was outrageous and in reckless disregard for Plaintiff's feelings, dignity, or fundamental rights as a human being.

71. When she patronized the establishment over a period of time, Plaintiff believed that she was welcome because of CVS' signature hospitality. CVS and their employees knew their conduct was outrageous, extreme, and hurtful; all the while, Plaintiff did not learn that she was the butt of a cruel joke until she discovered what was written on the receipt.

72. As an actual and proximate cause of these outrageous acts by Defendants conducted without due care or common decency, Plaintiff suffered and continues to suffer humiliation, mental anguish,

apprehension, and severe emotional distress.

73. As a result of these racist acts, Plaintiff has lost trust in the community. She feels like the target of a joke, and feels ridiculed, isolated, angry, and embarrassed.

74. In conducting themselves as herein alleged, CVS and their employees were acting within the course and scope of their employment.

75. Defendants may be held liable for the acts of their employees, agents, and/or franchisees.

76. As a direct, proximate, and legal result of the conduct of Defendants' failure to meet the applicable standards of care, and in breach of their duty to Plaintiff, Plaintiff has suffered and continues to suffer injury, mental anguish, severe emotional distress, harm, and damages, and therefore is entitled to recover damages from Defendants, according to proof at trial.

**AS AND FOR A SIXTH CAUSE OF ACTION**

**Negligent Infliction of Emotional Distress**

77. Plaintiff repeats the foregoing fully as if set forth herein at length.

78. Defendants owed Plaintiff a duty of care to exercise reasonable care in their regulation and management of the CVS store in question, including the duty to exercise reasonable care in hiring and/or supervising and/or training those acting on their behalf and at their direction and under their name in serving customers at this restaurant.

79. Defendants negligently breached their duty of care to Plaintiff so as to fall well below the applicable standard of care and directly, proximately, and legally cause harm to Plaintiff as described herein, specifically by (i) failing to comply with the federal, state, and city civil rights laws that mandate equal treatment and prohibit racial discrimination; and (ii) failing to adequately hire and/or supervise and/or train those acting on their behalf and at their direction and under their name in serving customers at this restaurant.

80. Defendants knew or should have known that their failure to exercise due care during the times in question alleged herein, and their failure to train and supervise employees or agents, their entry of the racial epithets into the computer, the display of those racial epithets on the computer screen, which were visible to all employees who checked orders and who joined in on the mockery and oppression, printing and handing the receipts bearing the racial epithets to Plaintiff would cause Plaintiff severe emotional distress.

81. In conducting themselves as alleged herein, CVS employees were acting within the course and scope of their employment.

82. Defendants may be held liable for the acts of their employees, agents, and/or franchisees.

9

83. As a direct, proximate, and legal result of the conduct of Defendants' failure to meet the applicable standards of care, and in breach of their duty to Plaintiff, Plaintiff has suffered and continues to suffer injury, mental anguish, severe emotional distress, harm, and damages, and therefore is entitled to recover damages from Defendants, according to proof at trial.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### PUNITIVE DAMAGES

84. Defendants' conduct shows total disregard for the safety of Plaintiff and other citizens and their protections under Sate and Federal laws to be free from racial bias, and therefore a claim for punitive and/or exemplary damages of One Million Dollars is justified, considering Defendants vast wealth of billions of dollars made a year.

### JURY DEMAND

85. Plaintiff hereby demands a jury trial of all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(a)　Awarding Plaintiff damages incurred as a result of violating her federal and state rights;
(b)　Awarding punitive damages in the amount of One Million Dollars for the conduct that no civilized society can tolerate;
(c)　Awarding attorneys' fees; costs and disbursements in this lawsuit; and
(d)　Granting such other and further relief as the Court may deem just, proper and equitable.

Dated:  April 16, 2013

*Stephanie Canas Hunnell*
_____
By: Stephanie Cañas Hunnell, Esq.
　　Stephanie Cañas Hunnell Attorney at Law, L.L.C.
　　801 Twelfth Avenue P.O. Box 428
　　Belmar, New Jersey 07719
　　Tel. 732.749-3500; Fax 732.749-3503

　　LAW OFFICES OF SUSAN CHANA LASK
　　Susan Chana Lask, Esq.
　　244 Fifth Avenue, Suite 2369
　　New York, NY 10001
　　917.300-1958